[No. 21357. Department One. November 14, 1928.]

GEORGE SHRIVE, *Appellant,* v. A. D. ANDREWS,
*Respondent.*

A. D. ANDREWS, *Respondent,* v. E. E. HARKINS
COMPANY, *Appellant.*[1]

*J. L. Baldwin,* for appellant.

*Winter S. Martin, William A. Gilmore* and *Arthur Collett, Jr.,* for respondent.

PARKER, J.—These consolidated actions involve the claimed right of George Shrive, as assignee of E. E. Harkins Company, to recover upon promissory notes and to foreclose a mortgage securing them, all executed and delivered by A. D. Andrews to Harkins Company, and the claimed right of Andrews to have the notes and mortgage canceled by reason of fraud in-

[1]Reported in 271 Pac. 823.

ducing him to execute them. Trial was had in the superior court for King county, sitting without a jury, and resulted in findings and decree canceling the notes and mortgage, and denying recovery thereon, from which Harkins Company and Shrive, its assignee, have appealed to this court.

On November 22, 1923, a contract was entered into between Harkins Company and Andrews by which it agreed to sell and he agreed to purchase two thousand boxes, of twelve pairs each, of an automobile headlight device called "Marvel Headlight Ray Arrestor"; it being further agreed that he should have the right to sell the device in California only and for a limited time, subject to extension of time upon Andrews purchasing from Harkins Company additional quantities in lots of five hundred boxes each. For the agreed purchase price of $5,800 for the two thousand boxes, Andrews executed and delivered to Harkins Company four negotiable promissory notes, each for the principal sum of $1,450, payable January 10, March 1, May 1 and August 1, 1924. To secure these notes, there was then executed and delivered to Harkins Company by Andrews a mortgage upon real property in Seattle. By the terms of the contract, five hundred boxes of the device were delivered at the time of the making of the contract; five hundred boxes were to be delivered upon payment of the first maturing note; five hundred boxes were to be delivered upon the payment of the second maturing note and five hundred boxes were to be delivered upon payment of the third maturing note. On February 25, 1924, an extension of the times for making the payments was agreed upon, in pursuance of which the notes and mortgage of November 22, 1923, were canceled, and five new notes were executed by Andrews to Harkins Company, one for $950 due April 10, 1924, one for $1,000 due May 1, 1924, one for $1,450

due July 1, 1924, one for $1,450 due October 1, 1924, and one for $450 due November 1, 1924, all aggregating the sum of $5,300, there having been a reduction of the total to that amount by an agreement which need not be here considered. At that time a new mortgage was executed as security by Andrews to Harkins Company upon the same property covered by the prior mortgage.

On May 13, 1924, Andrews commenced the first of these actions in the superior court for King county, seeking recovery of damages from Harkins Company grounded upon fraud practiced by its officers and agents in inducing him to enter into the contract and execute the notes and mortgages. Andrews claimed relief in the form of damages in the aggregate amount of the notes, they having been, by Harkins Company, transferred before maturity to an innocent holder and then being in the hands of such innocent holder, thus rendering Andrews liable thereon to such holder, regardless of fraud in the procuring of their execution. Thereafter Harkins Company became reinvested with title to the notes, and thereafter it assigned the notes and mortgage, with other property, to George Shrive, for the benefit of its creditors.

Thereafter, on September 11, 1926, Shrive, as such assignee, commenced the second of these actions in the superior court for King county, seeking recovery from Andrews upon the five notes and foreclosure of the mortgage. Andrews answered in that action, setting up the defense of fraud and misrepresentation as against Shrive's claim of recovery upon the notes, in substance as Andrews had in his prior action sought recovery of damages as against Harkins when the notes were in the hands of an innocent holder.

Thereafter the court, by order, consolidated the actions for trial, upon the theory that the issues were

564

the same in each, and that the parties were in legal effect the same in each, though the first was in form a law damage action, and the second a foreclosure of equitable cognizance. The issues so made proceeded to trial upon the merits, resulting in a decree canceling the notes and mortgage, and denying recovery, as we have above noticed.

This record does not disclose any serious controversy over the facts so far narrated by us. The disputed facts touching the merits are those bearing upon the question of the alleged fraudulent representations made by Harkins Company, its officers and agents, inducing Andrews to execute the original and new notes and mortgage, and the failure of consideration. After a lengthy and strenuously contested trial and apparently very careful consideration of the more than four hundred pages of typewritten testimony presented to the trial court, it made findings touching the many controverted facts, the substance of the principal controlling findings being as follows:

"That in September, 1923, A. D. Andrews saw the device as it was then being displayed and exhibited in the office of the manufacturers, but did not learn of the true character of the said device and did not learn anything about it which would put him on notice of its wholly worthless character. The court finds from examination and inspection of said device, one of which has been introduced as one of the exhibits in this consolidated cause, and from all of the proof touching its merits or demerits, that it was and is without commercial or practical value, and was and is wholly worthless.

"That commencing in the latter part of October, 1923, and continuing from time to time during November, 1923, until consummation of the agreement on November 22, 1923, E. E. Harkins, C. G. Evans, acting for E. E. Harkins Company, of which they were respectively president and secretary, for the purpose of obtaining property and money from A. D. Andrews in

consideration of the sale of said devices and the territorial rights of California to said Andrews, represented to him that said headlight device was a quick, ready and active seller and was in great demand on the market; that about 677 boxes had been sold by E. E. Harkins Company through one Ernest Hey to the dealers in Eastern Washington; . . . that the California authorities had approved said device and had authorized its sale and use in California; . . . . that each of these representations was false, fraudulent and untrue, which they, said E. E. Harkins, C. G. Evans then and there well knew when they made the same, and they and each of them made said representations for the purpose of selling said device and sales rights to A. D. Andrews, and of securing the notes and mortgage which he subsequently executed as aforesaid. That later in the month of November, 1923, and before November 22nd, Ernest Hey, acting for and on behalf of E. E. Harkins Company, and while in its employ, at the direction of said Harkins & Evans, repeated in substance the representations regarding said device which Evans & Harkins had already made to Andrews, all for the purpose on the part of him the said Ernest Hey of aiding, abetting and furthering the said plan on the part of Evans, Harkins and the E. E. Harkins Company to sell said device to Andrews, and to secure his money and property by means of said sale, and the representations concerning same. That A. D. Andrews believed said representations, relied upon them and executed and delivered the said mentioned notes together with a real property mortgage securing the same, which mortgage and notes as subsequently renewed is the subject matter of the foreclosure suit. That at the time in November, 1923, when C. G. Evans, E. E. Harkins Company, E. E. Harkins and Ernest Hey were planning to sell the device to Andrews, and when they were representing the device as one which was a quick, active and ready seller, the manufacturing concern composed of Diurdle & Garvin had stopped manufacturing the same. That E. E. Harkins Company had sold not to exceed 71 boxes of these devices; . . . that on the 31st day of August, 1923, the Motor

Vehicle Act of California changed by operation of law, to wit, because of and by virtue of an amendment of the legislature of 1923, and that after said August 31st, 1923, said device was no longer saleable, nor could it in fact be used in said state on motor vehicles without meeting with the further approval and authorization of the said authorities. That said device had not been submitted to the California Motor Vehicle Authorities after August 31st, 1923, and then and there on November 22nd, 1923, said headlight device which A. D. Andrews purchased, as aforesaid, was not permitted by the laws of California to be sold or used. That it was not then and there an approved, licensed and authorized device under the California laws, but in truth was an outlawed device which could not be sold or marketed or used in California, all of which the Court finds, C. G. Evans, E. E. Harkins and Ernest Hey well knew when they represented the contrary fact while endeavoring to sell the same to Andrews . . .

"That on or about February 25th, 1924, defendants Harkins, Evans and Harkins Company, for the purpose of lulling and quieting any suspicion on A. D. Andrews' part that the company had not procured the permission of the California authorities to sell said device in California, and for the purpose of obtaining from Andrews commercial paper which was not overdue, so that they could sell and discount the same in the open market, agreed with Andrews to renew the notes and mortgage and to make a reduction in the amount of the original notes, if Andrews would carry out the purchase, he said Andrews, having failed to pay the January note when due. That said E. E. Harkins, C. G. Evans, acting for E. E. Harkins Company, and its benefit, and having full control of the same, further represented that a rumor which Andrews had heard to the effect that the device was not saleable in California, was untrue. That said device could legally be sold there and they could assure him of receiving such permission, if by any misunderstanding there remained anything further to do in the matter of securing said approval. That said further representations were false, fraudulent and untrue, as Evans and

Harkins well knew. That on said day, A. D. Andrews, believing said further representations and then and there relying upon the statements and representations originally made to him by Evans, Harkins and Hey, and believing the device had been authorized by California and could be lawfully used and sold therein, made, executed and delivered a new mortgage to secure a new series of notes."

Some other findings are made of the making of unfulfilled promises, on the part of Harkins Company to Andrews, looking to its aiding him in promoting his marketing of the device in California, as a further inducement for him to make the contract and execute the notes and mortgages. While these promises related to future events, the trial court found them to be made without intent on the part of Harkins Company to perform them. We note these unfulfilled promises, not as controlling, but as lending color to the intent with which the other representations of past and existing facts were made to Andrews.

The evidence convinces us, as it manifestly did the trial court, that Andrews did not become fully aware of the worthlessness of the device, or the falsity of the representations made to him by Harkins Company, its officers and agents that the device "was a quick, ready and active seller," and that "677 boxes had been sold by Harkins Company through one Hey to dealers in Eastern Washington," until after Andrews had executed the renewal notes and mortgage on February 25, 1924; also that Andrews did not become aware, until after that time, that the device was outlawed for sale in the state of California by the laws of that state.

It is strenuously contended in behalf of appellants Shrive and Harkins Company that the evidence does not sufficiently support the charges of fraud and misrepresentation to call for denial of recovery upon the notes. A reading of this voluminous evidence con-

vinces us that it establishes the facts as above summarized. It is quite impracticable, within the limits of other than a very lengthy opinion, to review in detail the evidence looking to the demonstration of the correctness of the court's conclusions. We deem it sufficient for present purposes to say that we are satisfied that the evidence supports the decree.

We have not lost sight of the contention made in this connection that at the time Andrews executed the renewal notes and mortgage he was sufficiently advised as to the nature and value of the device as a merchantable article to call for the holding that he then ratified the purchase. We think the answer to this contention is found in the fact that Andrews did not, until after that time, possess such knowledge as to call for the holding that he thereby ratified the purchase and executed the new notes and mortgage, in the sense that he thereby freed them from the taint of fraud.

Upon the merits of the controversy, we are of the opinion that the decree should be affirmed.

Contention is made in behalf of appellants Shrive and Harkins Company that the trial court erred to their prejudice in entering its order consolidating the cases for disposition as a single controversy, over their objections. What has already been said, we think, renders it plain that the real issue, that is, fraud, was the same in both cases, and that the disposition of one, especially the case of Shrive v. Andrews, seeking recovery upon the notes and foreclosure of the mortgage, is determinable of the other. Clearly, we think that there was not only no prejudice as against the rights of either Shrive or Harkins Company in entering the order of consolidation, but that it was eminently proper that such an order be entered. The making of such an order has been recognized by this

court as an exercise of discretion on the part of the trial court. *Thompson v. Mitchell*, 128 Wash. 192, 222 Pac. 617. This is in harmony with the generally accepted view of the law. 1 R. C. L. 360; 1 C. J. 1123.

Contention is made in behalf of appellants Shrive and Harkins Company that the commencement of Andrews' damage action, prior to the commencement of the action by Shrive to recover upon the notes and foreclose the mortgage, was an irrevocable election of remedies on the part of Andrews. We do not think so, as applied to this controversy. Looking through the technical aspect of the problem, it is easy to see that Andrews, by his defense in the later foreclosure action, sought, in substance, exactly what he sought in his damage action; that is, to be protected from the liability evidenced by the notes. Plainly, we think that by the commencement of his damage action Andrews did not waive the right to set up, as a defense to Shrive's foreclosure action, the same ground of fraud that he set up in his damage action. It may be that Andrews' damage action would be an election such as to bar his commencement of an original action strictly of rescission, though that is debatable in view of the notes being in the hands of an innocent holder when his damage action was commenced, and later returning into the hands of Shrive, as assignee of Harkins Company for the benefit of its creditors. However, that is not our present problem.

We conclude that the decree should be affirmed. It is so ordered.

FULLERTON, C. J., ASKREN, FRENCH, and MAIN, JJ., concur.